Good morning, Your Honors. What happened in this case was that a man known to Mr. Salvatierra as Big Blue Bird was looking at porn on his computer at work. He got arrested and was sentenced in the same district, in the same courthouse, with the same prosecutor, I believe, to 96 months in custody. Mr. Salvatierra entered a plea straight up to both counts that were charged in the indictment, and he ended up with 210 months. And I would point out that under the recent cases of Gall and Kimbrough, I'd like to draw an analogy between the crack guidelines and the porn guidelines, because what has happened here, and the Commission itself has acknowledged that the hysteria surrounding the PROTECT Act has taken its specific directives and Excuse me, Counsel, have you briefed the Gall and Kimbrough arguments? I have not. The Kimbrough arguments? So this is a novel argument that you're making to us. Right, and I can back off. I looked at those cases last night and Unless my colleagues feel differently, I would respectfully suggest that you proceed with what you've briefed, because your opposing counsel really hasn't had an opportunity to respond. So, although I'm sure the argument would have been ingenious and interesting, let's proceed with what you've briefed. I would say that the prosecutor filed a, in its brief, discussed the case of Williamson. And I also read that last night. And in Williamson, that defendant had abused his own granddaughter, filmed it, put it and had the family come in. This was cited as a reason, and he received 180 months. His family came in to object. It's the opposite of this case, where what happened to Mr. Salvaterra was that his daughter was abused by someone. He was accused while he was in the military. It was proven that he had not done it. The dates were wrong. Everything was wrong on that. As a result, he slid into a depression. He began drinking. He started looking on the Internet. And he made contact with these other people on the Internet. He had some weird idea about, you know, trapping predators. And I do not want to characterize him as a victim, because he ended up And it's not only just whether it's proper for the court to enhance, but also whether the court should have considered, under 3553 factors, the disparity between Now you're going off on Kimbrough and Gall again, aren't you? Oh, this is the argument I made. Okay. Right. It was the disparity between the big blue bird, which was the other person that was sentenced in the court, and The other charges were, didn't involve distribution. Correct. But that's simply, that's a function of the prosecutor, prosecutorial discretion. The prosecutor did not offer Mr. Salvaterra that he didn't get distribution. In fact, offered nothing at all, which is why it was a straight up plea with argument. So what happened was that the other person who had apparently received matters from Mr. Salvaterra, and they were involved in a thing called Bear Share, got 96 months. And Mr. Salvaterra, who was charged with the distribution, but none of the enhancements were charged. And I did raise this. And I did raise the Booker arguments and the arguments that were available to me at the time that I filed my sentencing briefs and my brief here. But are you arguing that the pre-sentence report, which contained detailed evidence from e-mails, I'm not going to read these because they're pretty bad, but March 23rd, March 31st, May 18th of 2005, which at least on their face seemed to say, I'll trade with you. And on the other hand, Hibbard, who got 96 months, was charged with having received images as opposed to distributing them. And Logan got 97 to 121 months, and there's no evidence that he distributed anything. So in this case, the enhancement is based almost entirely around the point that your client was involved in distributing as well as receiving in terms of the 3553A factors. Well, I understand. And, Your Honor, I have a lot of trouble with the words that were on there as well. And I just, I can't, I'm not going to address it. But what I will say is that it was, it was, if it had been alleged, they would have had to allege that all these men were trading. That's what he was charged with. He was not charged with exchanging for money. He was charged with sending these pictures in exchange for other pictures. That's all it takes, isn't it? Yes, that is all it takes. But these other guys were doing the same thing. One of them, at least, was a cooperating witness. Pardon me? One, I believe the person, I think it's Hibberd, that the government first got on to became a cooperating witness, essentially. Well, I, I, I mean, isn't that? He confessed the moment that they caught him at his work. He said, here's my computer, you can find out who I was talking to and where I was getting the stuff. Here's my work computer that my boss already caught me on. I, I, I think the cooperator was the boss. But in any case, yes, that is within the prosecutorial. I don't count for some of the disparity incentives. Well, right. Except factually, I, I, and this is just, this is just a problem for me that I don't know that this Court can handle. Well, I can say, Ms. Voreis, the fact is, as was pointed out by Judge Canby, I mean, cooperating witnesses do plea bargains that give them a much better deal than people who don't do that get. I mean, that happens every day in our system. Are you suggesting that the whole system is unconstitutional or something because cooperating witnesses cooperate and they get lesser sentences? Well, Your Honor, I'm, no. I, that also is not in my brief that cooperating witnesses are, that that's unconstitutional. No. But the, the broad discretion that is given so that, so that one person can cooperate and one cannot because of choices that are, that are not known and cannot be known. My, my client cannot come forward and say, oh, yeah, he's the one that was, was molesting his own daughter that wanted to take them on a camping trip and trade them. You know, the, the government has already made its deal before my client was ever even arrested. So that's, and I'll submit and sum up in, in the government stuff. Okay. Very good then. Thank you very much. Ms. Voorhees, we'll hear from Mr. Brown from the government. Good morning, Your Honors. I'm Lawrence Brown, assistant United States attorney with the Eastern District of California. This case involves a man who the district court aptly described as an extreme danger to children. He amassed a staggering collection of 166,000 still in video images of child pornography and delighted in their trafficking. It is an admittedly severe sentence of 210 months, certainly. But it is one that was warranted and reasonable under this court's post-Booker jurisprudence, such as Cantrell. The driver for the sentencing here is what the court has noted during argument is certainly the five-level enhancement for distribution with anticipation of receipt of potential child pornography. And the sentencing commission addressed this sort of conduct in 2000 with the amendment to the guidelines, recognizing that many times the distribution is not for procuratory gain or profit, but so that they can add to their collection. And certainly I would also stay away from reading the specific e-mails, but certainly they show a bartering mentality, explaining what interest he has and then finding out what the person on the other end has an interest in, says, I hope to hear from you. Let's trade. As Judge O'Neill, the district court judge, properly found, there was but no question that this enhancement applied and, in fact, that this case scenario is precisely what was envisioned in the commentary to the November 2000 amendments. So the evidence was proven to the court that there was ample record to apply this. That took his sentencing guideline range up 100 months. And so he was in his own category compared to others. Now, the sentence that was imposed, this 210 months, as I stated, is, in fact, reasonable. And it seems to be that the key argument is this notion of disparity. And the counsel cites to Mr. Hibbard, whatever his nickname happened to be. Well, his finding of him is what led ultimately to the finding also of the appellant. And what we had there was no evidence of distribution by Mr. Hibbard. So he was a receipt of pornography. So his guideline range simply was a lower guideline range. It was 87 to 108 months. And I would note that the prosecutor in this case, which was not myself, argued for the top of the guideline range on Mr. Hubbard. But the court gave a middle 96 months. I suppose if the defendant was sentenced on the theory that he was trading, then the other person must have been distributing, too. Well, and that would be if there had been evidence of that. But as you can see from this record, there is the ability now to do computer forensic analysis of a person's computer and trace back their e-mail trafficking to see, once they receive images, do they then send those images back out? Some are simply collectors. I mean, they're all perverse people. And this is a dark, horrible world that has had a spotlight cast on it. He's not being sentenced for his perversity. He's being sentenced because people who collect child pornography are ultimately financing a market for people who do actually mistreat the children. That's absolutely correct, Your Honor. It's like, you know, not permitting a collection of leopard skins or ivory or something. That's right. So the thing that's relevant may be perhaps the size of this library. But I don't know whether his perversity is more than 110 months. Well, as the Court, and Judge O'Neill observed, that he has an insatiable sexual appetite for children as a characterization of the appellant, and that he posed an extreme danger to children. A person who, if you're reading these e-mails and what he would like to do to these children, does show a level of perversity and danger that is not really even typical of many of the cases that we see here. This is someone who was sort of at the top end of the spectrum in terms of his collection that he put together. I think the Court was right in sort of the expressions that he made at sentencing relative to this particular individual. Well, isn't the reality here, Judge Canopy's point, of course, is very, very apt. But the reality is here that for whatever reason, whether it was because there was a plea cooperation or whatever, my review indicates that there was no evidence in the Hibbard case of distribution. They might have been able to put some evidence in, but they didn't. You're absolutely right. It was a plea, and they didn't have that. And the same with Logan. There was no evidence that was distributed. Now, they may have been able to do it, but they didn't. So in their particular cases, it simply didn't happen. And as I understand it, from the government's position, the application note number 1 to the sentencing guidelines seems to deal directly with this barter concept that there was evidence in the pre-sentence report in Mr. Salvatier's case. Is that your understanding? It is absolutely, Your Honor. And I think that also, as Judge O'Neill observed, Mr. Hibbard, he said there was a huge difference between the appellant and Mr. Hibbard, 300 times the quantity of pictures. He, Mr. Hibbard, pled guilty immediately, confessed what he had done. The appellant says, it's my collection of artwork. It takes him over a year. He rejects plea offers and finally pleads without a plea agreement. These are different persons, and disparity is acceptable and is to be something that is a valid jurisprudential concept. It's unwarranted disparity that the court is concerned with. It's not unwarranted in the circumstance. The Plouffe decision makes clear that there is disparity and there is disparity. And in this situation, this appellant, who he was, his actions ultimately resulted in what was a warranted and reasonable disposition by the district court. There was no abuse of discretion by the court in its application of the guideline under the Kimbrough decision, and there was no clear error in terms of his factual findings that he, in fact, bartered pornography, hence triggering this extra 100 months. If there's no further questions, I'll submit. Roberts. I don't think there are. Thank you, counsel. Ms. Vorisch, would you like to use the remainder of your time? Yes. Or at least part of it, whatever you like. Your Honors, since the government brought it up, the offer exceeded the final sentence So, yes, Mr. Salvatara rejected the offer, but ended up having a sentence with a straight-up plea that was less than the offer and permitted him to come here and deal with some of the facts. Second, he objected to the taking of his artwork because they literally took his artwork. He had paintings. He had artwork. They took everything out of his room, including all their family photos. They initially talked about a much smaller amount of images. I never saw 166,000 images, but I also have to confess that I go and count up my 600 plus, and I'm usually done. But in the initial discovery, there was never the first discussion of 166,000 images came at sentencing. So, and this was the third sentencing. So I don't know where all these images came from. And when I say third sentencing, I mean the third setting for sentencing, because they would come in and say he molested his daughter, and then we would bring all the court work from the ex-wife. Well, was any point made at sentencing about the number of images? Was there any factual objection to the district court? Yes. Yes, there was factual objection in the district court. That was what this was all about. And we objected all the way through to him bringing in all of these things that not only were uncharged, but the enhancements were uncharged and unproven. So, thanks. Thank you very much, Ms. Voorhees. The case of United States v. Salvatierra is submitted.
judges: Canby, Thompson, Smith